UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\------------------------------------------------------------- X
                            :

THE KAYO CORP.,
                            :

               Plaintiff,     :     **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE**

           v.            :

                            :     18 Civ. 3981 (AKH)

FILA U.S.A., INC.,
                            :

               Defendant.    :

                            :
\------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        In advance of trial, I ordered the parties to brief certain issues relevant to damages. At oral argument on December 1, 2021, I declined to exclude either party's expert report on damages. I also denied Defendant's request to exclude portions of Plaintiff Kayo's expert report on lost profits on substantive grounds, but noted that Defendant Fila may prevail on a motion to exclude Plaintiff's claims for lost profits as outside the contemplation of the parties. At the time, there was no motion pending to that effect and I gave leave to Defendants to file such a motion. Defendant now seeks to exclude three categories of Plaintiff's claimed damages: (1) lost profits, (2) lost commissions arising from the Renewal Term, and (3) interest on any damages. For the reasons that follow, Defendant's motion is granted with respect to lost profits, but denied with respect to lost commissions and interest. For the purposes of this motion, I assume parties' familiarity with the relevant facts.

## I.   LOST PROFITS

Defendant seeks to exclude evidence of Plaintiff's lost profits, primarily on the grounds that lost profits were not contemplated by the parties, nor can they be proven with reasonable certainty in this case.  While my ruling at the December 1, 2021 oral argument forecloses the latter argument, Defendant's argument that lost profits were not contemplated by the parties rings true.

Under New York law, lost profits can be either general or consequential damages, depending on the nature of the lost profits in question.  *Optima Media Grp. Ltd. V. Bloomberg L.P.*, 2021 WL 1941878, at *20 (S.D.N.Y. May 14, 2021) (citing *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 109–10 (2d Cir. 2007)).  "Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements.  In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract."  *Tracetebel*, 487 F.3d at 109.  General damages "are the natural and probable consequence of the breach" of a contract and include "money that the breaching party agreed to pay under the contract."  *Biotronik*, 22 N.Y.3d at 805 (citing *American List Corp. v. U.S. News & World Report*, 75 N.Y.2d 38, 43 (1989)).  The damages Kayo seeks here are appropriately characterized as consequential damages, as the lost profits stem from making sales to third parties, there is no agreement that Kayo receive a certain amount of compensation from Fila, and there is nothing like a schedule setting forth costs and fees.  *See Am. List Corp. v. U.S. News & World Rep., Inc.*, 75 N.Y.2d 38, 43–44 (N.Y. 1989).

Lost profits stemming from collateral business arrangements are only recoverable when "(1) it is demonstrated with certainty that the damages have been caused by the breach, (2) the extent of the loss is capable of proof with reasonable certainty, and (3) it is established that the damages were fairly within the contemplation of the parties." *Tractebel*, 487 F.3d at 109. Courts impose a "high standard" on parties seeking to establish that any agreement contemplated lost profits. *See Great Earth Intern. Franchising Corp. v. Milks Dev.*, 311 F.Supp.2d 419, 436 (S.D.N.Y. 2004). "The parties must contemplate, not turning a profit, but 'the particular damages' owing to lost profits should the deal turn sour." *Id.* at 435 (citation omitted).

Plaintiff's argument on recovery of lost profits misses the mark. New York law has long required "a showing that the particular [lost profits] damages were fairly within the contemplation of the parties to the contract at the time it was made." *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986) (accord *Biotronik*, 22 N.Y.3d 799). Here, the License Agreement makes no mention of "lost profits." In such circumstances, courts evaluate "what the parties would have concluded had they considered the subject." *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 334 (2d. Cir. 1993) (citing *Kenford*, 67 N.Y.2d at 261). The *Trademark Research* court refused to permit recovery of lost profits when "the record contains no specific evidence that, at the time of contracting, [one party] accepted liability [for lost profits]" or when "[n]o evidence was offered that the parties ever discussed lost profits liability." *Id.* In the instant case, there is similarly insufficient evidence that either party ever accepted liability for the other's lost profits. Although the License Agreement contemplates the payment of percentages of sales, that is not tantamount to contemplating lost profits.

Plaintiff argues that a party seeking to recover lost profits as general damages must establish only that the profits in question were "the natural and probable consequence of the breach of a contract." *Biotronik*, 22 N.Y.3d at 807–08. Plaintiff's reliance on *Biotronik* is misplaced. In that case, the parties' agreement was for the sale and resale of medical supplies and the price of the supplies in question was specifically tied to the resale price. Under the *Biotronik* agreement, the terms of the agreement were structured so that the reselling party would necessarily realize a profit on its resales. No similar term exists here. The Agreement contemplates only commission fees and conditions renewal on net sales. But net sales and profits are not equivalent; Kayo could have realized $850,000 in net sales of the relevant product without ever turning a product on that business line. That conclusion is consistent with other decisions that have addressed this question. *See, e.g., Ashland Management Inc. v. Janien,* 82 N.Y.2d 395, 403–04 (1993) (lost profits allowed only where parties extensively bargained over a provision which allowed for the recovery of lost profits and set a precise schedule of the amount of recovery); *Int'l Cards Company, Ltd. v. MasterCard Int'l Inc.*, 2016 WL 7009016, at *3 (S.D.N.Y. Nov. 29, 2016) (alleged losses stemming from failed efforts to work with third parties nonrecoverable). Accordingly, there is little to suggest that the parties contemplated awarding lost profits as damages for any potential breach. Thus, the portion of Defendant's motion concerning lost profits is granted.

## II.   LOST COMMISSIONS DURING THE LICENSE RENEWAL TERM

At oral argument in December, I ruled that Plaintiff's proofs of damages arising from the Initial Term of the License were admissible. The License also provided for an automatic renewal (the "Renewal Term"), though such a term never began because of the

conduct underlying the instant suit.  Defendant seeks to exclude proofs of Plaintiff's damages arising from the Renewal Term.

Defendant seeks to exclude evidence of damages from the Renewal Term because such renewal was uncertain.  That argument is reasonable—but properly understood, that objection goes to the weight, not the admissibility, of Plaintiff's expert report and other evidence. *See Boucher v. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("other contentions that the assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'") (citing *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188, *cert. denied* (2d Cir. 1992)). Resolving this question primarily depends on questions of fact, such as whether Fila would have approved Kayo's January 2017 proposals, whether Kayo had the financial ability to market any co-branded products, and what efforts Kayo could have made with approved manufacturers.  Critically, the likelihood that there would have been $850,000 of sales in relevant products (the trigger for renewal) depends, in part, on *when* those products would have reached market—a question of fact best resolved at trial.  Any evidence on this point and others would best be challenged through cross-examination and contrary evidence, rather than outright exclusion, especially given that this is in advance of a bench trial.  Accordingly, excluding Plaintiff's expert report or other evidence of lost commissions during a potential Renewal Term would be premature. Defendant's motion is denied with respect to the portion concerning damages arising from he Renewal Term of the License Agreement.

### III.   INTEREST

Defendant claims that Plaintiff is not entitled to contractual interest as a matter of law.  Defendant argues that the License Agreement makes no provision for Plaintiff's recovery of interest, only for Defendant's recovery of interest at a rate of 20%.  *See* License Agreement

§ 7.4.  Although Defendant is correct that the License Agreement makes no provision for

Plaintiff to recover interest on its damages, Defendant misunderstands New York law.  By statute,

"[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a

contract."  CPLR § 5001 (2012).  In the absence of any contractual provision setting an interest

rate, the statutory rate is 9%.  CPLR § 5004 (2012).  Regardless of whether the correct rate is 9%

or 20%, Plaintiff would be entitled to recover interest if it prevails on its claims.  Determining

the applicable rate would best be determined during or after trial.  Accordingly, the portion of

Defendant's motion concerning interest is denied.

## CONCLUSION

Defendant's motion is granted with respect to lost profits but denied with respect

to lost commissions and interest.  The Clerk shall terminate ECF No. 107.  Oral argument

scheduled for February 1, 2022 is canceled.  The parties shall appear for a status conference on

February 4, 2022 at 10:00 a.m. to chart further progress in the case and set a date for trial.

SO ORDERED.

Dated:       January 26, 2022
             New York, New York

ALVIN K. HELLERSTEIN
United States District Judge